IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-02827-BNB-MJW

AVALANCHE EQUIPMENT, LLC,

Plaintiff,

v.

WILLIAMS-SOUTHERN COMPANY, LLC,

Defendant.

_____

**FINDINGS, CONCLUSIONS, AND ORDER FOR JUDGMENT**
_____

Plaintiff, Avalanche Equipment, a Colorado limited liability company with its principal place of business in Englewood, Colorado, commenced this action in the District Court of Jefferson County, Colorado. The defendant, Williams-Southern, a Mississippi limited liability company with a principal place of business in Laurel, Mississippi, removed the action based on diversity of citizenship, 28 U.S.C. §1332. The case was tried to the court on December 15-16, 2014.

The dispute is summarized by Avalanche Equipment as follows:

> Avalanche Equipment, LLC rented equipment to Williams-Southern Company, LLC for use at two oil and gas project sites in North Dakota: Watford City, ND . . . and 56th St. NW, Epping, ND. . . . The terms for the rentals were under a December 27, 2012 credit application. The projects are operated by Gadeco, LLC. Various pieces of equipment were rented on account from January 2013 to May 2013. Williams-Southern did not make any payments on its rental account with Avalanche. Therefore, Avalanche picked up the remaining rented equipment from the two sites in April and May, 2013.

Final Pretrial Order [Doc. # 27] at ¶3(a).

Based on these allegations, Avalanche Equipment asserts four claims for relief: (1) Breach of Contract; (2) Unjust Enrichment; (3) Breach of Implied Contract; and (4) Open Account. Complaint [Doc. # 3]. At trial, however, Avalanche Equipment pursued only its claim for breach of contract.

I.

The facts largely are undisputed. Based on the testimony and documentary evidence presented at trial, I find the following by a preponderance of the evidence:

(1)     Williams-Southern was hired by Gadeco to perform work at the Epping well site located near Watford City, North Dakota.

(2)     Avalanche Equipment is in the business of leasing equipment for use at drilling sites for oil and gas wells, including sites located in North Dakota.

(3)     Bernard Hunt is an account manager for Avalanche Equipment. His responsibilities include selling, picking up new customers, and taking care of existing customers, including taking orders for equipment rentals and making sure that the equipment is delivered in the field.

(4)     In December 2012, Mr. Hunt was contacted by Travis Hibley. At that time, Mr. Hibley was employed by Williams-Southern as a supervisor/tool pusher. A tool pusher "is the most knowledgeable person on a location for a rig and they are the immediate supervisor for that crew." Trans. Vol. 1 [Doc. # 52] at p. 44 lines12-15. Mr. Hibley wanted to rent a generator and a towable heater in connection with work being performed by Williams-Southern in North Dakota.

(5) Prior to renting equipment, Mr. Hunt required Williams-Southern to submit a Credit Application.

(6) Williams-Southern submitted a Credit Application, Ex. 1, on December 27, 2012. The Credit Application is signed by Scott Williams, the owner of Williams-Southern.

(7) Avalanche Equipment approved the Williams-Southern Credit Application. The Credit Application provides:

> The undersigned agrees to the following terms:
> - All invoices are NET 30.
> - Past due interest is 1.5% per month on all past due balances.
> - In the event of non-payment, customer will pay all costs of collection, including reasonable attorney fees and costs.

Ex. 1.

(8) Following the approval of Williams-Southern's Credit Application and at the request of various Williams-Southern employees, Avalanche Equipment leased the following equipment to Williams-Southern, which was accepted and used by Williams-Southern in connection with the work it performed for Gadeco at the Epping well site and in the man camp in Watford City, North Dakota:

| Equipment | Date Rented | Date Returned | Amount Billed |
|---|---|---|---|
| Generator        (Inv. # 6224) | 12/29/2012 | 04/24/2013 | $ 35,377.50 |
| Towable Heater   (Inv. # 6245) | 01/01/2013 | 05/02/2013 | 52,817.97 |
| Towable Heater   (Inv. # 6246) | 01/12/2013 | 02/22/2013 | 13,919.79 |
| 4 Heater Hoses   (Inv. # 6247) | 01/12/2013 | 02/22/2013 | 2,862.00 |
| Towable Heater   (Inv. # 6250) | 01/13/2013 | 03/29/2013 | 22,821.80 |
| Towable Heater   (Inv. # 6248) | 01/19/2013 | 02/08/2013 | 8,710.02 |
| Towable Heater   (Inv. # 6249) | 01/19/2013 | 02/07/2013 | 8,732.81 |
| Towable Heater   (Inv. # 6345) | 01/24/2013 | 03/15/2013 | 15,391.20 |
| Towable Heater   (Inv. # 6346) | 01/24/2013 | 03/29/2013 | 19,530.50 |
| **TOTAL** | | | **$180,163.59** |

Ex. 3.

(9)     Despite repeated requests from Avalanche Equipment, Williams-Southern never signed the Rental Agreement Additional Terms And Conditions form provided by Avalanche Equipment. Ex. 25 at AVALANC 00195.

(10)    Although Williams-Southern disputes the authority of Mr. Hibley and its other employees to bind Williams-Southern to any lease contract with Avalanche Equipment, Mr. Williams testified:

> Q  [by Mr. Janiszewski]  Did you authorize--well, did you authorize anybody--
>
> A     Not on William--
>
> Q     up there to order heaters?
>
> A     Okay. Not on Williams' behalf.
>
> Q     What do you mean by that?

>A     That William--the only way you could order a heater that Williams was responsible for is you had to have a PO and you had to have authorization from the main office. Now, if the company [man] with Gadeco advised you to get heaters that is the company [man]. That's part of Gadeco. You're working for him so you do what he says.
>
>\* \* \*
>
>THE COURT:   Mr. Williams, did any representative of Williams-Southern ask Avalanche to provide equipment at the direction of the Gadeco company man?
>
>THE WITNESS:   From my understanding, yes.
>
>THE COURT:   And is the equipment that they asked Avalanche to supply, that--those nine pieces that are listed in Exhibit . . . 28?
>
>THE WITNESS:   --what I was advised by one of our company field reps was Mr. Joe Bernard, the company man for Gadeco, the representative, advised for our guys to get heaters on everything Gadeco had out there immediately. And they asked who do you want to get heaters from and he said find them, I don't care. He said well, there's a heater out here with Avalanche on it. I don't care. Get heaters on location now. And so my guys at that point in time done what Mr.--the company man from Gadeco represented by them to do.
>
>THE COURT:   Is it your understanding that representatives of Williams-Southern, that is who contacted Avalanche for the heaters?
>
>THE WITNESS:   From my under--from my understanding that is how it initially was started. Yes, sir.

Trans. Vol. 1 [Doc. # 52] at p. 245 lines 9-23 and p. 265 line19 through p. 266 line 18.

II.

Williams-Southern's first defense is that its tool pusher, Travis Hibley, and its other employees who contacted Avalanche Equipment and ordered the delivery of equipment lacked authority to bind Williams-Southern to a lease. The argument is contrary to the evidence and is without merit. Mr. Williams, the owner of Williams-Southern, testified that (1) Williams-

Southern's employees were to do as the Gadeco company man directed; (2) Joe Bernard, Gadeco's company man, "advised for our [Williams-Southern's] guys to get heaters on everything Gadeco had out there immediately"; and "my guys at that point in time done what Mr.--the company man from Gadeco represented by them to do."  Under these facts, Williams-Southern's employees had express authority to follow the instructions of Joe Bernard, the Gadeco company man, and to rent the generator, towable heaters, and heater hoses as he instructed.  See Willey v. Mayer, 876 P.2d 1260, 1264 (Colo. 1994)(holding that "[e]xpress authority exists whenever the principal directly states that its agent has the authority to perform a particular act on the principal's behalf"); Johnson v. Chilcott, 658 F. Supp. 1213, 1219 (D. Colo. 1987)(applying Colorado law and holding that "the principal and agent, through written or verbal agreement or by conduct, may agree between themselves that the agent may act on behalf of the principal").

Williams-Southern also argues that Avalanche Equipment's breach of contract claim fails because the lease is not in writing and is unenforceable under section 4-2.5-201, C.R.S.  That provision states in relevant part:

> **Statute of Frauds.**  (1)  A lease contract is not enforceable by way of action or defense unless:
>
>    (a)  The total payments to be made under the lease contract, excluding payments for options to renew or buy, are less than one thousand dollars; or
>
>    (b)  There is a writing, signed by the party against whom enforcement is sought or by that party's authorized agent, sufficient to indicate that a lease contract has been made between the parties and to describe the goods leased and the lease term.
>
> \*   \*   \*
>
>    (4)  A lease contract that does not satisfy the requirements of subsection (1) of this section, but which is valid in other respects,

>    is enforceable:
>
> *   *   *
>
>    (b) If the party against whom enforcement is sought admits in that party's pleading, testimony or otherwise in court that a lease contract was made, but the lease contract is not enforceable under this provision beyond the quantity of goods admitted; or
>
>    (c) With respect to goods that have been received and accepted by the lessee.
>
>    (5) The lease term under a lease contract referred to in subsection (4) of this section is:
>
>    (a) If there is a writing signed by the party against whom enforcement is sought or by that party's authorized agent specifying the lease term, the term so specified.
>
>    (b) If the party against whom enforcement is sought admits in that party's pleading, testimony, or otherwise in court a lease term, the term so admitted; or
>
>    (c) A reasonable lease term.

Here, there is a partial writing--the Credit Application--which contains certain terms between the parties. There is no writing signed by Williams-Southern, however, sufficient to describe the goods leased or the lease term.

Mr. Williams admitted in his testimony that, at the direction of the Gadeco company man, his employees leased the generator, towable heaters, and heater hoses identified by Avalanche Equipment in its Exhibit 28. Consequently, Mr. Williams has admitted that Williams-Southern leased from Avalanche Equipment the equipment at issue here for the term stated, and the lease is enforceable under section 4-2.5-201(b), C.R.S.

In addition, the evidence establishes that Avalanche Equipment delivered the generator, towable heaters, and heater hoses to Williams-Southern and that Williams-Southern accepted and used that equipment. Consequently, the lease is enforceable under section 4-2.5-201(c),

C.R.S.

Avalanche Equipment's total claim is for $180,163.59. Of that amount, $161,646.80 is for rental, delivery, and pickup. Ex. 4. Avalanche Equipment also claims $18,216.79 for parts, labor, and service of damaged equipment. Id. at AVALANC 00010, 00011, 00014, 00015, 00017, 00026, and 00033. Avalanche Equipment also claims $300.00 for "DIESEL PER GALLON." Id. at AVALANC 00033.

The $300.00 charge for diesel is unexplained and finds no basis in the signed Credit Application or testimony. Consequently, I will not award that amount.

The $18,216.79 for parts, labor, and service is based on paragraphs 7-9 of the Rental Agreement Additional Terms And Conditions form to which Williams-Southern never agreed. Although Williams-Southern is bound to the written terms of the Credit Application, which it signed, and to pay for the rental of the equipment leased by it at the direction of the Gadeco company man, there is no basis to hold Williams-Southern responsible for the charges attributable to parts, labor, and service, to which it never agreed.

Avalanche Equipment also seeks interest on the past due balance at the rate of 1.5% per month, as agreed in the signed Credit Application. Exhibit 30 contains Avalanche Equipment's interest calculation, but it includes interest calculated on the charges for diesel, parts, labor, and service of damaged equipment, which I have disallowed. Avalanche Equipment may submit a revised past due interest calculation which omits these disallowed items.

Avalanche Equipment also requests an award of its costs of collection, including reasonable attorney fees and costs, as provided in the signed Credit Application. I will award reasonable attorneys' fees on the submission of an application which complies with the

requirements of Fed. R. Civ. P. 54(d)(2) and D.C.COLO.LCivR 54.3.  Avalanche Equipment may recover its costs, other than attorneys' fees, in the manner provided by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

## III.

For the reasons stated, judgment shall enter in favor of the plaintiff, Avalanche Equipment, LLC, and against the defendant, Williams-Southern Company, LLC, as follows:

(1) For rent on equipment in the amount of $161,646.80;

(2) For interest on the past due balance for rental charges at the rate of 1.5% per month through the date of these Findings, Conclusions, and Order for Judgment, to be established by an affidavit to be submitted on or before January 14, 2015;

(3) For reasonable attorneys' fees to be awarded on the submission of a fee application, to be submitted on or before January 14, 2015;

(4) For its costs, to be awarded pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

(5) For post-judgment interest as provided by law.

DATED December 31, 2014.

            BY THE COURT:

            s/ Boyd N. Boland
            United States Magistrate Judge